IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LARRY W. BARGER, | ) | |
| | ) | Civ. No. 07-0256-E-BLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM DECISION |
| v. | ) | |
| | ) | |
| | ) | |
| BECHTEL BWXT IDAHO LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by defendant Bechtel. The Court held oral argument on September 12, 2008, but the plaintiff, representing himself, did not appear. The record shows that advance notice of the hearing was mailed to his residence. The Court took the motion under advisement. For the reasons expressed below, the Court has now decided to grant the motion.

## FACTUAL BACKGROUND

In 2004, plaintiff Barger was working for defendant Bechtel. In that year, he started suffering from stress-related issues, including anxiety, and insomnia.

**Memorandum Decision – page 1**

Barger claims these maladies affected "my health and work performance." *See Barger Affidavit* at ¶ 3. He was becoming, in his own words, "increasingly irritable [and] argumentative." *See Barger Deposition* at p. 93. He sought medical help, and his physicians prescribed Paxil and Xanax. No physician was prescribing any restrictions on his employment. Barger states that he "notified and continued to keep immediate work managers informed of health concerns, visits to my personal health care provider and prescribed medication as required by company policy . . . ." *Id*. at ¶ 7.

    During November of 2004, a number of employees working with Barger complained that he was displaying signs of stress and micromanaging their work. When confronted by his supervisors, Barger became visibly frustrated and upset. Although Barger's physician had increased the dosage of his medications, Barger's co-workers noticed a rising level of stressful behavior by Barger.

    On the evening of November 29, 2004, John Edelmeyer, one of Barger's supervisors, called Barger at home and told him to take the next day off. Barger responded that he would see how he felt in the morning. The next day – November 30th – Barger came into work. Edelmeyer insisted that Barger see a physician with Bechtel's Employee Assistance Program (EAP). Barger recalls that he responded as follows: "You wanted me to take a few days off, let me go home and I will see

**Memorandum Decision – page 2**

my own doctor," but Edelmeyer responded that "I could not go home until I see the company doctor." *Id*. at ¶ 14. Barger continued to resist, but Edelmeyer insisted that he visit the EAP.

On the way to the EAP, Barger became very agitated, flipped his badge to his supervisor, and said he was quitting. He then got in his car and left for home. In his deposition, Barger was asked if he was in any condition to go to work on November 30th, and he responded, "Probably not. I shouldn't have been to work that day. I should have been off on medical leave. I fully admit that." *See Barger Deposition* at p. 81.

When Barger got home, he slept for two days. Bechtel decided to accept Barger's resignation, but wanted to examine whether he could be brought back into another position. About two days later, not having heard from him, Edelmeyer had the police to rouse him. Barger informed Bechtel that he did not intend to resign. *See Barger Affidavit* at ¶ 16.

Barger was told that he must undergo an EAP, which he did on December 6, 2004, with Dr. Ken Minnix. Barger states that he "never gave him permission to disclose any confidential medical and personal information obtained during evaluation." *Id.* at ¶ 21.

Immediately after the EAP, on the same day, Bechtel held a Personnel

**Memorandum Decision – page 3**

Action Advisory Group (PAAG) meeting to consider whether to place Barger in another position. Dr. Minnix was at the PAAG meeting, and his contribution is recorded in the minutes as follows:

> Spent 1.5 hours with Barger. He thinks very highly of himself. That he is a do all. Sees himself as the absolute best mgr. on site. Some behavior traits will never change – you will never get him to not ping off the walls. Referred him to community resources for further counseling. Admitted to having an explosive temperament and over reacts. Long standing personality pattern. Barger blames everyone else for his issues.

*See Exhibit C to Edelmeyer Affidavit*. The PAAG members concluded that Barger should be terminated, and Bechtel so informed Barger on December 10, 2004.

Barger responded by filing this lawsuit, alleging claims under the Family Medical Leave Act (FMLA), the Americans With Disabilities Act (ADA), and various state law claims. Bechtel and the other defendants have filed a motion for summary judgment that the Court will analyze below.

## ANALYSIS

1. **ADA Claim**

Barger asserts that defendants violated the ADA by requiring that he see a company physician and undergo a medical evaluation. Section 12112(d)(4)(A) of the ADA provides that covered entities shall not require medical examinations of their employees for the purpose of determining "whether such employee is an

**Memorandum Decision – page 4**

individual with a disability or as to the nature and severity of the disability" unless the examination "is shown to be job-related and consistent with business necessity".

There is no evidence in this case that Bechtel sought the medical exam to determine whether Barger had a "disability" or to explore its scope. But even if there was such evidence, the medical exam was clearly job-related and consistent with business necessity. In *Yin v. State of Cal.*, 95 F.3d 864 (9th Cir. 1996), an ADA case, the Circuit held that "when health problems have had a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work, even if the examination might disclose whether the employee is disabled or the extent of any disability." *Id*. at 868. The district court in that case had granted summary judgment on the ground that the employer had a job-related reason for requiring its employee to undergo a medical examination – the employee was excessively absent. The Circuit affirmed the summary judgment, holding that the medical exam was justified by the excessive absenteeism.

The record here shows that Barger's health concerns had a substantial and injurious impact on his job performance judging by the numerous work-related complaints against him, discussed above. Bechtel had a legitimate concern about

**Memorandum Decision – page 5**

Barger's ability to work, and required the medical exam to address that concern. Under *Yin*, Bechtel's insistence on the medical exam is not a violation of the ADA.

Barger also alleges that Bechtel violated the ADA when Dr. Minnix shared confidential information from his exam of Barger with the PAAG. However, the record shows that Dr. Minnix only shared general job-related observations about Barger, as discussed above. While the ADA provides that company medical exams will be treated as confidential, it specifically allows an exception when managers and supervisors must be informed regarding necessary restrictions on work or duties of the employee. *See* 42 U.S.C. § 12112(d)(3)(B). That is what Dr. Minnix was doing before the PAAG, and his conduct did not violate the ADA.

Barger also asserts that Bechtel violated the ADA by firing him in retaliation for initially refusing to undergo the medical exam. However, as the Court has held, Bechtel's insistence on the medical exam did not violate the ADA, and was justified by business necessity. Hence, Barger's retaliation claim under the ADA must also be dismissed.

2.   **FMLA**

Barger claims that he made a request for FMLA leave on November 30, 2004, when he resisted undergoing a medical exam by Bechtel's physician and requested to be able to go home and see his own physician. However, the Court

**Memorandum Decision – page 6**

has held above that Bechtel's insistence that Barger undergo a medical exam was not improper in any way. Barger responded by quitting, and Bechtel accepted his resignation. At that point, Barger presents no evidence that a health care provider determined that he was unable to perform one or more of the essential functions of his job at that time, as required by the FMLA. *See* 29 U.S.C. § 2612(a)(1)(D). For this reason, his FMLA claim must be dismissed.

3.  **Wrongful Discharge, Retaliatory Discharge & Fraud**

These state law claims are all tied to allegations that Bechtel acted improperly in requiring a medical examination and sharing confidential medical information. The discussion above shows that such conduct was not improper and hence these claims must likewise be dismissed.

4.  **Intentional Infliction of Emotional Distress**

Barger has not submitted any evidence of the extreme and outrageous conduct that is an element of this claim. This claim shall therefore be dismissed.

5.  **Interference Claims**

Barger alleges that Bechtel interfered with his ability to obtain unemployment benefits. However, it is undisputed that Barger did obtain those benefits. An element of the tort of interference is that Bechtel's conduct "result[ed] in damage." *See Highland Enterprises Inc. v. Barker*, 986 P.2d 996,

**Memorandum Decision – page 7**

104-5, n.3 (1999). Because Barger does not present any evidence of actual damage, he cannot prove this essential element of the offense. Moreover, he is not entitled to nominal damages – when actual damages are an element of the tort, "nominal damages are not awarded." *See Restatement (Second) of Torts*, § 907, comment a, at p. 462 (1979). For these reasons, Barger's interference claims must be dismissed.

**6.     Conclusion**

The Court finds no genuine issues of material fact, and hence will grant the defendants' motion for summary judgment. The Court will issue a separate Judgment as required by Rule 58(a).



DATED:  **September 25, 2008**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision – page 8**